UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

  - against -

JULIUS BARNES,

                    Defendant.

------------------------------------X

12 Cr. 671 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On April 12, 2013, Julius Barnes, ("Defendant" or "Barnes") pled guilty to Count 2: Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951, a Class C felony, and Count 3: Carrying and Possessing a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), a Class A felony. For the reasons set forth below, Defendant will be sentenced to a term of 33 months' imprisonment for Count 2 to be followed by a mandatory and consecutive term of 60 months' imprisonment for Count 3. Defendant will also be sentenced to 2 years' supervised release for Count 1 and 3 years' supervised release for Count 3, all counts to run concurrently. Defendant will be required to pay a special

1

assessment of $200.

**Prior Proceedings**

On August 29, 2012, Defendant was named in a three-count Indictment 12 CR 671 (RWS) in the Southern District of New York. Count 1 charges that from at least July 2012 through August 1, 2012, in the Southern District of New York and elsewhere, Barnes, co-defendant Brian Stubbs ("Stubbs"), co-Defendant Kean Chambers ("Chambers"), co-defendant Kaison Gillespie ("Gillespie"), and others, agreed to commit an armed robbery of people suspected of possessing narcotics and cash in an apartment in New York, NY. Count 2 charges that on August 1, 2012, in the Southern District of New York and elsewhere, Barnes, Chambers, Stubbs, Gillespie, and others, participated in the attempted armed robbery of people suspected of possessing narcotics and cash in an apartment in New York, NY. Count 3 charges that on August 1, 2012, in the Southern District of New York and elsewhere, Barnes, Chambers, Stubbs and Gillespie, during and in relation to the attempted robbery charged in Count 2, possessed and carried a firearm in furtherance of that crime.

On April 12, 2013, Barnes pled guilty to Count 2 and Count 3 of Indictment 12 CR 671 (RWS) only.

Defendant's sentencing is scheduled for February 11, 2014.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for —
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
>
> (5) any pertinent policy statement . . . [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to

4

Defendant's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that document.

In late June 2012, a confidential source ("CS-1") spoke to Defendant about a potential robbery of cocaine shipments that would be arriving in Manhattan from Colombia. On July 2, 2012, CS-1, another confidential source ("CS-2") and Barnes, met on a street in Manhattan. CS-2 was equipped with a video-and-audio-recording device during this meeting. Based on the review of the video and audio recording made by CS-2, it was discovered that CS-1 told Barnes that CS-2 was expecting a multi-kilogram shipment of cocaine from Colombia. CS-2 told Barnes that when the cocaine arrived, CS-2 would meet an unknown individual at a location in Manhattan to receive the drugs and arrange the sale of the drugs to another party for approximately $300,000.

Barnes told CS-2 to call him when the cocaine

5

arrived, and then Barnes and his associates would come to the location and steal the drugs and money by force. Barnes explained that he would commit the robbery with his brother and/or cousin; Barnes agreed to split the stolen money with CS-2 immediately following the robbery. Barnes also asked CS-2, "Is it a problem if the people in the house die?"

Barnes stated that he used to commit drug robberies, but that Barnes' main business now was selling kilograms of cocaine. Barnes explained that he would meet CS-2 immediately after the robbery and show CS-2 the stolen kilograms of cocaine. Barnes agreed to give CS-2 a percentage of the profit made from the sale of each kilogram of stolen cocaine.

On August 1, 2012, at approximately 8:15 p.m., CS-2 met Barnes in the vicinity of W. 207th Street and Seaman Avenue in Manhattan. Law enforcement officers surveilled this meeting and observed Barnes arriving on foot. During this meeting, CS-2 informed Barnes that that the robbery would take place at a building in the area where they were meeting (the "Location"). CS-2 told Barnes to follow CS-2 to the Location. After this meeting, other law enforcement officers observed Barnes leave the meeting

with CS-2 and enter a van (the "Van") located in the vicinity of Isham Street and Seaman Avenue in Manhattan.

CS-2 and Barnes then arrived at the Location. A marked NYPD vehicle subsequently arrived at the Location and pulled in front of the Van, at which point four males jumped out of the Van and ran away from the Location. Law enforcement officers chased the four males and ultimately apprehended and arrested them. The four males were subsequently identified as Barnes, Chambers, Gillespie and Stubbs.

Upon a search of the Van, the following items were recovered: a loaded .45 caliber Hi-Point handgun; a loaded .22 caliber revolver; a loaded 9mm caliber Ruger handgun with a defaced serial number; two bulletproof vests; bleach; ammonia; latex gloves; zip ties; duct tape; an ASP baton; and a riding crop.

After waiving his Miranda rights, Chambers stated to law enforcement agents that on August 1, 2012, his cousin, Gillespie, Barnes and Stubbs agreed to meet in the Bronx, NY. Chambers agreed to attend that meeting as well.

Barnes, Gillespie, Stubbs and Chambers drove to meet CS-2 on August 1, 2012. On their way to meet CS-2, Barnes stopped at a store to buy bleach and ammonia. When Barnes, Gillespie, Stubbs and Chambers arrived at the Location in the Van and observed the NYPD vehicle, Gillespie yelled, "Run, fucking run, don't get caught with anything."

Barnes, Gillespie, Stubbs and Chambers were arrested on August 1, 2012. There are no applicable role adjustments. As the robbery was a jointly undertaken activity between Barnes, Stubbs and Gillespie, and because firearms were an element of the offense, only Barnes, Stubbs and Gillespie are responsible for the possession of the firearms. Chambers was unaware of the fact that the others were planning a robbery of drugs or that they possessed firearms.

### The Relevant Statutory Provisions

For Count 2, the maximum term of imprisonment is 20 years, pursuant to 18 U.S.C. § 1951. For Count 3, the mandatory minimum term of imprisonment is five years and the maximum term is life, which must be served

8

consecutively to any other sentence imposed on the Defendant, pursuant to 18 U.S.C. § 924(c).

For Count 2, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2). For Count 3, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than five years, pursuant to 18 U.S.C. § 3583(b)(1). Such terms of supervised release run concurrently, pursuant to 18 U.S.C. § 3624(e).

For Count 2, the Defendant is not eligible for probation because he is being sentenced at the same time to a term of imprisonment on a different count, pursuant to 18 U.S.C. § 3561(a)(3). For Count 3, the Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2).

For Counts 2 and 3, the maximum fine is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $200 is mandatory, pursuant to 18 U.S.C. § 3013.

## The Guidelines

The parties have previously stipulated to the following pursuant to a written plea agreement:

- For Count 2, the base offense level is 20, pursuant to § 2B3.1. Pursuant to § 2B3.1(b)(2), because a firearm was possessed, there is a three-level increase in the offense level. The object of the offense was the taking of a controlled substance. Pursuant to § 2B3.1(b)(6), the offense level is increased by one level. Accordingly, the total offense level for Count 2 is 24.

- For Count 3, the sentencing guideline applicable to the offense charges in Count 3 is § 2K2.4. Pursuant to §2K2.4(b), the guideline sentence is the minimum term of imprisonment required by statute, is 60 months' imprisonment to run consecutively to any other term of imprisonment imposed.

- The Defendant accepted responsibility and a three-level reduction in the offense level is warranted, pursuant to § 3E1.1(a) and (b).

- According to the plea agreement, the total offense level is 21. The Defendant has five criminal history points and is in Criminal History Category III.

Based upon the calculations set forth in the plea agreement, the Defendant's Sentencing Guidelines range is 46 to 57 months' imprisonment with a consecutive mandatory

10

minimum term of 60 months' imprisonment for a guidelines range of 106 to 117 months' imprisonment.

In the plea agreement, the parties agreed that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted.

The parties' calculation of the Guidelines range is problematic. § 2K2.4(b) governs convictions for violations of 18 U.S.C. § 924(c). § 2K2.4 Application Note No. 4 provides in part that if "a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge or an explosive or firearm when determining the sentence for the underlying offense." Defendant's case falls within this prohibition.

In recalculating Defendant's Guidelines sentence, the November 1, 2013 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used pursuant to § 1B1.11(a). The Court finds the following with respect to the Defendant's applicable offense level, criminal history, recognition of responsibility and term of

11

imprisonment:

Count 2 charges Defendant with Attempted Hobbs Act Robbery, a violation of 18 U.S.C. § 1951. Count 3 charges Defendant with Carrying and Possessing a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Pursuant to § 3D1.1(b)(1), Count 3 is to be treated separately because the statute requires a mandatory term of 60 months' imprisonment be imposed to run consecutively to any term imposed pursuant to the provisions of § 5G1.2(a).

The Guideline for a violation of 18 U.S.C. § 1951 (Count 2) is § 2B3.1, which provides for a base offense level of 20, pursuant to § 2B3.1(a).

Although a dangerous weapon was possessed during instant offense, there is no enhancement to the offense level, pursuant § 2K2.4 Application Note #4. Pursuant to § 2B3.1(b)(6), a one-level increase in the offense level is warranted because the taking of a controlled substance was the object of the offense.

Based solely Defendant's plea allocution,

12

Defendant has shown recognition of responsibility for the offense. Because of the Defendant's timely notification of his intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, and because the aforementioned base offense level is 16 or greater, pursuant to § 3E1.1(a) and (b), the offense level is reduced three levels.

According to the PSR, the total offense level is 18.

As outlined below, the Defendant has one adult criminal conviction.

On September 18, 2002, Defendant was sentenced to 9 years' imprisonment and six months' driver's license suspension for two counts of attempted murder in the New York County Supreme Court in New York, NY. Pursuant to § 4A1.1(a), this conviction warrants three criminal history points.

The criminal convictions above result in a subtotal criminal history score of three. At the time the instant offense was committed, the defendant was on parole.

Pursuant to § 4A1.1(d), two points are added. The total criminal history points is five. According to the sentencing table at Chapter 5, Part A, five criminal history points establishes a Criminal History Category of III.

Based on a total offense level of 18 and a Criminal History Category of III, the Guideline range for imprisonment is 33 to 41 months for Count 2. Count 3 requires a mandatory and consecutive term of 60 months' imprisonment.

For Count 2, the guideline range for a term of supervised release is at least one but not more than three years, pursuant to § 5D1.2(a)(2). For Count 3, if a term of imprisonment is imposed, the Court may impose a term of at least two years but not more than five supervised release, pursuant to §5D1.2(a)(1).

For Count 2, the Defendant is not eligible for probation because he is being sentenced at the same time to a term of imprisonment on a different count or case, pursuant to § 5B1.1(b)(3). For Count 3, the Defendant is not eligible for probation because the instant offense is

one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is from $6,000 to $60,000, pursuant to § 5E1.2(c)(3)(A) and (c)(4)(A). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,412.33 to be used for imprisonment, a monthly cost of $278.95 for supervision, and a monthly cost of $2,244.17 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility

15

"to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For Count 2, Defendant will be sentenced to 33 months' imprisonment; for Count 3, Defendant will be sentenced to 60 months' imprisonment, to run consecutively from Count 2. For Counts 2 and 3, Defendant will be sentenced to 2 years and 3 years supervised release, respectively, to run concurrently.

As mandatory conditions of his supervised release: (1) the Defendant shall not commit another federal, state or local crime; (2) the Defendant shall not illegally possess a controlled substance; (3) the Defendant shall not possess a firearm or destructive device; (4) the Defendant shall refrain from any unlawful use of a controlled substance and shall submit to one drug test

16

within fifteen (15) days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer; and (5) the Defendant shall cooperate in the collection of DNA as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13) shall be imposed with the additional special conditions:

(1) The Defendant shall submit his person, residence, place of business, vehicle or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The Defendant is to report to the nearest Probation Office within 72 hours of release from custody. The Defendant shall be supervised by the district of

17

residence.

It does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

It is further ordered that the Defendant shall pay to the United States a special assessment of $200, which shall be due immediately.

The Defendant has been detained without bail since his arrest. He is not a candidate for voluntary surrender because of the provisions found in 18 U.S.C. § 3143(a)(2).

The terms of this sentence are subject to modification at the sentencing hearing scheduled for February 11, 2014.

It is so ordered.

**New York, NY**
**February 7, 2014**

[signature: Sweet]

**ROBERT W. SWEET**
**U.S.D.J.**